*EDWARD H. DRINKWATER v. EGLANTINE JONES.

ACTION FOR DAMAGES FOR FALSE IMPRISONMENT.

In an action for damages for false imprisonment, the defendant is liable, if, as a matter of fact, he did procure the arrest of the plaintiff, and the plaintiff was arrested, at the instigation and direction of defendant, and was imprisoned or deprived of his liberty by his directions and under his procurement; as, in law, the act of the constable making the arrest becomes the act of the defendant.

ERROR.

KING, J.

Eglantine Jones brought an action, in the court of common pleas, against Edward H. Drinkwater, setting forth her cause of action in this petition:

"Plaintiff states that on the 12th day of April, 1895, at Toledo, Ohio, the defendant imprisoned plaintiff and deprived her of her liberty for the space of, to-wit, seven days, unlawfully and with force, on a pretended charge of larceny, to the damage of plaintiff in the sum of $500. Plaintiff further says that she was put to expense for counsel fees and other charges in the sum of, to-wit, $20, in obtaining her discharge, to her damage in all in the sum of $520, for which she prays a judgment against the defendant."

The answer is in the form of a general denial filed to this petition, and the case came on for trial, resulting in a judgment in favor of plaintiff below in the sum of $175. It is claimed that that judgment should have been set aside, because the court erred in the admission of testimony, in the charge of the court to the jury, because the damages were excessive, and because, also, that the petition does not state a cause of action.

The latter claim is made, viz., that the petition does not state a cause of action in this case, because it describes the arrest as having been made upon a pretended charge of larceny, whereas the fact shown was that it was a charge for stealing or embezzling certain chattel mortgage property; and, again, that it does not state a cause of action, because it should set forth the facts and show in what manner the defendant had acted to secure the imprisonment; the facts shown on the trial being that Drinkwater had not arrested the defendant, but that he was the complainant, and swore to the affidavit charging her with the offense,

and that the constable, who had received from a justice of the peace a legal warrant for that purpose, had himself arrested her.

We have examined the petition, and, although it is exceedingly brief, we think it fulfills the requirements of the code in that respect, and is substantially in the form of a petition found in the 33 O. S., page 186. The charge of the court (which I may as well consider in connection with this petition further), and which was objected to, was the statement by the court (page 37 of the record), as follows:

"If, as a matter of fact, he" (that is, the defendant below), "did so procure the arrest of the plaintiff, if the plaintiff was arrested at his instigation and direction, was imprisoned or deprived of her liberty by his directions and under his procurement, in law, the act of the constable became the act of the defendant."

And it is claimed that this was incorrect. But, again, referring to the case above cited, that was an action brought against the complaining witness, the justice of the peace and the constable who made the arrest, jointly, and the facts showed that all the complaining witness did was to go before a justice and there sign and swear to an affidavit pretending to charge a person with an offense; but the affidavit stated certain facts which showed that no offense had been committed, if the facts were true; the complaining witness did nothing further than that. Upon this sort of an affidavit the justice of the peace issued a warrant, and the constable received it and afterward made the arrest, and they were sued jointly and a judgment was rendered against the justice of the peace, and the complaining witness was upheld. The reasoning of the court is, that the complaining witness, by swearing to an affidavit of that kind, which did not charge any offense at all, would render himself liable to an action for false imprisonment if the party was arrested upon such an incomplete charge. But in this case, the facts are, that the complaining witness not only swore out a warrant (the warrant itself was in proper form, and so was the affidavit, charging a sufficient offense against one Eva Jones), but he accompanied the constable to the place where it was said he supposed Eva Jones was, and he pointed her out to the constable, and left the constable to arrest the person whom he said was Eva Jones, and the person charged as being Eva Jones professed that she was *not*, and it developed that she was a sister of Eva Jones, named Eglantine Jones, so that, as the facts appear in the record, she was not the person that he was seeking to have arrested, and not the person whom he had charged with the offense; and thus they arrested a person against whom there was no charge at all. He did more than to make this affidavit—he took the constable to the place and pointed out the person to be arrested. We think that those facts, constitute a cause of action against him— if he had pointed out a person who was not the one, he was liable. We deem the petition sufficient, and also think the charge of the court upon that question was sufficient.

As to the improper evidence admitted: On the cross-examination of defendant below, he was asked if he had not been in the habit previously of instituting other proceedings like this, or of having people arrested, and there was an objection and exception to that. We do not think that was proper, or that it ought to have been allowed; but we do not think it was prejudicial. His answer was, that he had, sometimes. We do not think that it is of sufficient consequence to authorize us to reverse this judgment.

Upon the question whether the damages are excessive, there is a little more difficulty. We have looked the testimony over very carefully, and have come to the conclusion that the damages are a little large in this action.

Eglantine Jones resided with her sister a part of the time—whose name was Mrs. Green—and then she transferred her residence to Mrs. Jackson's. While she was at Mrs. Jackson's, Mr. Drinkwater went to Jackson's house and saw her, and he there charged her with being Eva Jones; which she denied, and insisted that she was *not* Eva Jones. She says, on cross-examination, that she don't know as she told him who she was—because she didn't know that it was any of his business. She did not give her name, but said it was not Eva Jones. Eva Jones was charged with having bought a watch of the defendant below, who was engaged in the jewelry business, selling the goods on the installment plan, for which watch she gave some kind of a chattel mortgage; and that she had conveyed it away and not paid for it, and that she had not returned the property. She was a sister of this plaintiff. After this conversation with Eglantine Jones, in which Eglantine said she was not Eva, Drinkwater went to a justice of the peace and swore out this warrant, and then went back to the same house, with the constable—perhaps within a week—and then there was more talk of about the same effect. Eglantine told them then that her sister had gone to Canada; that she (Eva) did not know anything about the watch; that it couldn't have been her—the plaintiff—because she was not in the city at the time; that she had only been here about two months. On the trial it was developed that she—plaintiff—had been living here several years. She said that her sister had a watch, but did not know who her sister bought it of; knew that her sister got a watch, but she claimed she did not know it was mortgaged. She was arrested by the constable, taken before a justice of the peace and required to enter into bonds. A time was set for the trial of the case, a few days thereafter, but between the time of the arrest and the day set for the trial, the watch was delivered to Mr. Drinkwater, and was said to have been delivered to him by Mrs. Green, who was a sister of Eglantine and Eva Jones. When Mr. Drinkwater got his watch back, before or at the time of the calling of the case for trial, he dismissed it, or authorized the justice of the peace to do so, and there was no trial of the case. The evidence shows, we think, pretty clearly, that Mr. Drinkwater in good faith believed that the plaintiff here *was* Eva Jones; and there are some very suspicious circumstances in this record, and it is not clear that she was *not* Eva Jones. The claim was made that Eva Jones was in Canada, and had not been heard of for several months; that she had left the watch behind her, and that it was returned to Mr. Drinkwater, either by the plaintiff herself or by her sister. Plaintiff testifies that she didn't see the watch taken back, and didn't have anything to do with the taking of it back, but that her sister took it back; but all of these facts would seem to indicate that the injury to her was not to the extent that the jury found, and we think that they unreasonably found a verdict of $175 in this case. We think they must have been either biased or prejudiced in this case, and unless the defendant in error will remit $75 of this judgment, we shall reverse the case and remand it for a new trial; otherwise, we will affirm it.

*C. T. Johnson*, Attorney for Plaintiff in Error.

*L. M. Murphy*, Attorney for Defendant in Error.